FILED

2010 May-28  PM 03:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES T. BRAZZILL, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:08-cv-1920-AKK** |
| **JEFFERSON COUNTY** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the court is defendant Jefferson County Commission's ("defendant")

motion for summary judgment.  Doc. 23.  Plaintiff James T. Brazzill, Jr.

("plaintiff") has responded, (doc. 29), and defendant has replied, (doc. 30).

Accordingly, this matter is ripe for the court's review.  For the reasons stated fully

below, defendant's motion is GRANTED, and this action is DISMISSED with

prejudice.

## I.  PROCEDURAL HISTORY

Plaintiff commenced this action on October 16, 2008, by filing an

application under §706(f) of the Civil Rights Act of 1964 and submitting his Equal

Employment Opportunity Commission ("EEOC") right-to-sue letter.  Doc. 2.  The

court deemed the application a complaint and ordered plaintiff to file an amended

complaint, (doc. 1), which, contrary to defendant's contention, plaintiff timely

filed on November 14, 2008, (doc. 3).  Plaintiff's amended complaint alleged that

defendant[1] discriminated against him because of his race by failing to promote

him, in violation of 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").  Doc. 3 at 3-4.

## II.  FACTUAL BACKGROUND

Defendant hired plaintiff, an African-American male, in 1999 as a

Construction Engineer Inspector in its Environmental Services Department.

Doc. 25-1 at 6 (Dep. p. 17-18).  In this position, plaintiff is responsible for

monitoring the sanitary sewer work on construction projects.  Doc. 25-1 at 13

(Dep. p. 45).  Plaintiff also handles complaints from property owners related to the

construction and maintenance of sanitation infrastructure.  *Id.* (Dep. p. 47).  These

responsibilities require plaintiff to spend six to seven hours a day inspecting

construction sites.  *Id.* at 14 (Dep. p. 52).  To assist him while out in the field, like

his co-workers, plaintiff has a two-way radio.  *Id.* at 17 (Dep. p. 62).  While in the

office, plaintiff has a cubicle work space.  *Id.* at 24 (Dep. p. 89).

---

[1] Plaintiff's amended complaint named the Jefferson County Personnel Board as a defendant, but dismissed them from this action by consent of the parties.  Docs. 14, 15.

Plaintiff claims that defendant denied him a computer (although only one of his four co-workers has one), a telephone (plaintiff does not say whether his co-workers have one), and made him wait longer than his co-workers to receive a camera.  Doc. 29 at 7-8; doc. 25-1 at 14, 17-19 (Dep. pp. 49-50, 61-70).  Plaintiff also claims that defendant evicted him from an empty office he once used, to make way for a white employee.   Doc. 29 at 7-8; doc. 25-1 at 22, 24 (Dep. pp. 82-91).

From around August 2006 to February 2007, plaintiff worked in a "fill-in" position in the Plans Review Department.  Doc. 25-1 at 12 (Dep. pp. 41-44).  This position allowed him to "acquire the experience as a Plan Review [sic], [and] it could lead to a promotion, and then from a promotion to a supervisor position." *Id*. (Dep. p. 44).   However, no one ever promised him a promotion.  *Id.*  After his stint in Plans Review, plaintiff returned to his Construction Engineer Inspector position.  *Id*.

Defendant utilizes a "structured" interview process to fill vacancies. Doc. 25-4 at ¶3.  In a structured interview, each applicant is asked the same questions and receives a numeric score based on how their responses correspond to pre-determined answers.  *Id*. at ¶5.  Prior to the interviews, the department with the vacancy prepares the questions and potential answers and sends them to defendant's Human Resources Department, which then reviews and approves

them.  *Id.*  Thereafter, defendant interviews the applicants who meet the minimum

qualifications for the position.  The applicants receive a score based on how their

answers compare to the predetermined answers.  *Id.*  The interview process

emphasizes an applicant's work experience and capabilities as revealed by his or

her answers to the questions.  *Id*.  The process is designed to remove the

interviewer's personal opinion or bias.  *Id*.  Defendant awards the job to the person

with the highest score on the structured interview.  *Id.* at ¶7.  In fact, Human

Resources "will only certify the highest scoring as the person eligible for said

position," and, if this individual declines, then Human Resources will allow the

next highest scorer to receive the position.  *Id.*

Plaintiff interviewed with defendant unsuccessfully for six positions

between January 2, 2007, and January 14, 2008.  Doc. 25-1 at 28-43 (Dep. pp.

107-165).  White employees scored the highest and received five of the positions,

and an African-American, Lavon Evans, scored highest and received the sixth

position. Doc. 25-3 at 69-70.  Plaintiff contends that defendant denied him all six

positions because of his race.

Defendant provided the following reasons for the selection decisions at

issue:

(1) January 2, 2007, Principal Engineering Inspector, Environmental Services Department – For this position, defendant ranked the candidates in seventeen categories.  For fourteen of the seventeen categories, defendant ranked on a 0, 1, and 2 scale.  Doc. 25-2 at 8-9.  For questions 4, 5, and 7, defendant used a 0-3 scale.  *Id.* at 8-9, 13.  Based on this scale, the highest possible score was 37.  The twenty-six candidates interviewed scored from a low of 19 to a high of 36.  *Id.* at 3.  Plaintiff scored 31, which was lower than six individuals.  *Id.*  John Pocus scored the highest and received the promotion. *Id.* at 3, 13.  Pocus scored  higher than plaintiff in supervisory experience, experience with sewer line maintenance, sewer construction and/or inspections, surveying experience, and conflict resolution.  Doc. 24 at 6-7; doc. 25-2 at 3.

(2) January 9, 2007, Principal Engineering Inspector, Environmental Services Department  – For this position, defendant ranked the candidates in fifteen categories, with one point maximum in two of the categories, two points maximum in one category, four points maximum in ten categories, and five points maximum in two categories.  Doc. 25-2 at 38-41.  Based on this scale, the highest possible score was 54 points.  *Id.*  Plaintiff scored 32 points.  *Id.* at 50-51.   In contrast, the successful candidate, William Champion, scored 48 and rated higher than plaintiff in wastewater operator class C1 certification, coordinating duties and assigning work, experience in conducting inspections, knowledge of equipment, experience in reporting SSOs, experience in calculating estimated volume of SSO, experience in documenting damages and knowledge, and experience of surveying.  *Id.* at 31-34; doc. 24 at 8.

(3) January 22, 2007, Sewer Service Supervisor, Environmental Services Department – For this position, defendant ranked the candidates in thirteen categories.  Doc. 25-2 at 66-67, 69.  Candidates who did not meet job requirements received a "–", *i.e.*, zero points, an "x," *i.e.*, one point, for meeting job requirements, and a "+," *i.e.*, two points, for exceeding the job requirements.  *Id.* at 69.  Based on this scale, the highest possible score was 26.  *Id.*  Plaintiff scored 20 points – he received zero points for not having a commercial driver's license, a "1" for meeting the qualifications in four of the categories and a "2" for exceeding the qualifications in eight of the categories.  *Id.* at 76.  The successful candidate, Harold Rose, scored a

perfect 26 and rated higher than plaintiff in five categories:  commercial driver's license, ability to work with other department divisions, ability to use proper procedure when working on personal property, ability to use correct safety precautions when working in the road, and ability to deal with angry customers.  *Id.* at 69-70; doc. 24 at 9-10.

(4) June 18, 2007, Principal Engineering Inspector, Roads and Transportation Department – For this position, defendant ranked the candidates in twelve categories, using the "–", "x," and "+" system.  Doc. 25-2 at 90-92.   The successful candidate, Terry Rich, was rated as meeting the job requirements in two of the twelve categories, *i.e.*, an "x," and as exceeding the requirements, *i.e.*, a "+," in the other ten.  *Id.* at 97.  In contrast, plaintiff was rated as lacking familiarity in two of the twelve categories and as having no training in a third category.  Doc. 25-3 at 9-10.  Defendant selected Rich because he scored the "highest."  Doc. 24 at 11.  Unlike Rich, who worked in the department with the vacancy and had familiarity with the duties, the interviewer described plaintiff as "not as knowledgeable as other applicants in the type of work we do."  Doc. 25-3 at 7.

(5) July 25, 2007, Principal Engineering Inspector, Land Development Department – For this position, defendant ranked the candidates in fourteen categories, using the  "–", "x," and "+" system, *i.e.*, a 0-2 scale.  Doc. 25-3 at 18-19, 30-31, 42-43.  Based on this scale, the highest possible score was 28.  *Id.*  Plaintiff scored 14 and 18 from the two interviewers.  *Id.* at 42-43.  In contrast, the successful candidate, Eugene Sorrell, scored 22 and 25.  *Id.* at 30-31.  Defendant did not select plaintiff because he scored lower than Sorrell in "most categories."  Doc. 24 at 12; 25-3 at 30-31, 42-43.

(6) January 14, 2008, Principal Engineering Inspector, Environmental Services Department – For this position, defendant ranked the candidates in eighteen categories.  Doc. 25-3 at 64-68.  The maximum points for each category ranged from 0-5.  *Id.*  at 71-73, 87-91.  Plaintiff scored a total of 37 in the eighteen categories.  *Id.* at 85-86.  In contrast, the successful candidate and highest scorer, Lavon Evans, an African-American, scored 60.  *Id.* at 69-70.  Evans rated higher than plaintiff in wastewater operator class C1 certification, knowledge and understanding of working in Jefferson

County, writing ability, coordinating duties and assigning work, experience in reviewing products, experience in reporting SSOs, experience in calculating estimated volume of SSO, development and management of annual budget, experience in fleet management, and knowledge of structured interview process. *Id.* at 69-70, 85-86; doc. 24 at 13.

Plaintiff contends that he is more qualified than these six individuals because of his education (he has a Bachelor's of Arts in Mathematics and is pursuing his master's degree) and experience (before working for defendant, plaintiff worked for the City of Birmingham on a survey crew for three years, and before that, for Alabama Power), and that defendant denied him the positions because of his race.  Doc. 25-1 at 33-34, 37, 47 (Dep. pp. 125, 131, 143-44, 182-83); doc. 24 at 5.  According to plaintiff, none of the successful candidates had a four-year college degree.  Doc. 29 at 2.  However, plaintiff acknowledges the positions did not require a bachelor's degree.  Doc. 24 at 7-14; doc. 25-1 at 33-34, 37 (Dep. pp. 125-26, 132, 144); doc. 29 at 1.

## III.  SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## IV. LEGAL ANALYSIS

### A. Title VII and Section 1981 framework

Count I of plaintiff's first amended complaint, filed pursuant to 42 U.S.C. § 1983, alleges a race discrimination claim in violation of Section 1981. Doc. 3 ¶¶16-17.[2] Count II alleges race discrimination in violation of Title VII.

---

[2] A municipality cannot be held liable under a *respondeat superior* theory and can only be held liable under Section 1983 when "execution of a government's policy or custom . . . inflicts the injury." *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 690-91, 694 (1978). Defendant did not raise this ground as an independent basis for its motion and, accordingly, the parties did not brief this issue. Therefore, the court does not make a finding on this issue.

Doc. 3 ¶ 19.  The analysis for a racial discrimination claim under Section 1981 (brought pursuant to 42 U.S.C. § 1983) and Title VII are the same.  *See Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000); *Hunter v. City of Mobile*, 2010 WL 618325, at *6 (S.D. Ala. Feb. 18, 2010).  Accordingly, the court analyzes both claims jointly.

For circumstantial evidence cases, a plaintiff must establish a prima facie case by showing: (1) membership in a protected class, (2) qualification and application for the position, (3) rejection, and (4) selection of an individual outside of his protected class. *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1348 n.2 (11th Cir. 2007); *see also Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997).  Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to establish "legitimate, nondiscriminatory reasons for the challenged employment action." *Combs*, 106 F.3d at 1528.  A defendant "need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff," and defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus." *Id.* (citations and internal quotation marks omitted)

(emphasis in original).  If the defendant meets this burden, to prevail, the plaintiff must produce evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  *Id.*   A plaintiff must show that the defendant's proffered reasons were pretextual – that race, in fact, motivated the defendant's decision.  *Harrell v. Ala. Dep't of Educ.*, 342 Fed. Appx. 434, 436 (11th Cir. 2009) (per curiam).

In promotion cases, a plaintiff must do more than "assert[] baldly that he was better qualified than the person who received the position at issue."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004).  Nor may a plaintiff establish pretext "merely by questioning the wisdom of the employer's reason," if the reason is one that "might motivate a reasonable employer," (*Combs*, 106 F.3d at 1543), because "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions."  *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).   Instead, to prevail, a plaintiff must demonstrate that the disparities between he and the successful applicant are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff."  *Harrell*, 342 Fed. Appx. at 436 (citations omitted).

## B.     Plaintiff cannot establish that defendant's articulated reasons for the promotion decisions are pretextual.[3]

As a legitimate, nondiscriminatory reason, defendant asserts that it promoted the highest-scoring applicant on the structured interviews for each of the six positions at issue.  Doc. 24 at 7-13.   Since defendant has satisfied its burden, to survive summary judgment, plaintiff must demonstrate that defendant's proffered reasons are merely pretextual.  *See Thomas. v. Troy City Bd. of Educ.*, 302 F. Supp. 2d 1303, 1308-09 (M.D. Ala. 2004).  Plaintiff seeks to do so by claiming that: (1) he was more qualified because of his education and work experience; (2) defendant used a subjective scoring system; (3) he only had white interviewers; (4) defendant failed to provide him additional training; and (5) defendant denied him access to office equipment it purportedly provided to his co-workers.  Doc. 29 at 7-8.  As shown below, none of plaintiff's contentions establishes pretext.

---

[3] Defendant concedes that plaintiff can establish a prima facie case of discrimination, except for the position awarded to Lavon Evans, an African-American male. Doc. 24 at 18. Even though plaintiff admitted that Lavon Evans is African-American, (doc. 25-1 at 46 (Dep. p.180)), plaintiff does not concede that an African-American received one of the six positions.  If defendant is correct, plaintiff's prima facie case would fail. *See Revere v. McHugh*, 2010 WL 323145, *3 (11th Cir. Jan. 29, 2010) (per curiam) (plaintiff failed to establish a prima facie case since another member of her protected class received the promotion plaintiff sought).  However, since defendant relies on the same reason for all promotion decisions, *i.e.*, it promoted the person who scored the highest, the racial makeup of the sixth individual is irrelevant for this analysis of plaintiff's claims.

> 1.   *Personal opinion about one's own qualifications is insufficient to establish pretext.*

Although he raises several points to oppose summary judgment, plaintiff's claim rests primarily on his belief that his education and experience made him the most qualified applicant.  *See* doc. 25-1 at 33-34, 37, 47 (Dep. pp. 125, 131, 143-44, 182-83).  To prevail, plaintiff must show that the disparity in the qualifications between he and the other applicants is so great that no reasonable person would choose the successful applicants over him.  *Wilson*, 376 F.3d at 1090.  Plaintiff failed to make this showing.  Instead, he states only that he is more qualified because of his education and experience  –  precisely the sort of bald assertion that the Eleventh Circuit in *Wilson* found insufficient.  *Id.*  Moreover, "[t]hat Plaintiff believed in the superiority of his qualifications – that his seniority and experience should trump his poor performance on the exam – is not determinative; in reviewing a Title VII plaintiff's qualifications, we focus on the employer's requirements and do not second-guess the employer's business judgment."  *Turner v. City of Auburn*, 2010 WL 105712, at *2 (11th Cir. Jan. 13, 2010) (per curiam).

Tellingly, plaintiff admits that "[i]t doesn't really take a rocket scientist to do any" of the jobs he challenges, that the positions do not require a bachelor's degree, and that it was only his "personal opinion" that defendant failed to select

the most qualified person.  Doc. 25-1 at 30, 33-34, 37, 39, 47 (Dep. pp. 113-15,

125-26, 131, 144, 151, 182-83).  Moreover, the structured interview process

actually weighed the applicant's capabilities and work experience and assessed the

candidates' answers in evaluating their overall experience and qualifications.  *See*

doc. 25-4 at ¶5.  Plaintiff's experience, however, did not translate into the overall

highest score.  Instead, the six candidates selected scored higher than him in the

qualifications relevant for the positions.  *Id.* at ¶6.

     In the final analysis, plaintiff has not pointed to any evidence, other than his

own opinion, that demonstrates that the disparity between his qualifications and

those of the individuals selected is so vast that no reasonable person would have

selected these individuals over him.  *See Wilson*, 376 F.3d at 1090.  In contrast,

defendant provided a lengthy list of categories in which the successful candidates

scored higher than plaintiff.  That these candidates do not have a bachelor's degree

does not render them less qualified than plaintiff.  Moreover, this court is

precluded from acting as a "super-personnel department" that decrees that

defendant should have selected plaintiff, or anyone else, for that matter, based on

education, especially when, as here, a college degree is not a requirement for any

of the positions.  *See Elrod*, 939 F.2d at 1470.  Furthermore, it is not within this

court's province "to question the wisdom of choosing someone with [no degree]

over someone with a college diploma." *Keaton v. Cobb County*, 545 F. Supp. 2d

1275, 1309 n. 25 (N.D. Ga. 2008), *aff'd* 2009 WL 212097 (11th Cir. Jan. 30,

2009) (per curiam); *see also Springer*, 509 F.3d at 1349 ("Given the undisputed

evidence with respect to [the successful candidate's] qualifications for the

position, [plaintiff's] possession of a four-year degree thus is insufficient by itself

to conclude that [defendant's] proffered reasons for promoting [the other

candidate] is pretext.").  Accordingly, plaintiff's contention that his bachelor's

degree and work experience make him more qualified than the successful

applicants is insufficient to establish pretext.

> 2.    *That a selection method uses subjective components is*
> *insufficient, in itself, to make it discriminatory.*

Next, to show pretext, plaintiff contends that defendant uses "subjective

scoring of varied verbal responses provided in the interviews," and "[m]any of the

interview questions did not pertain to the positions for which they were utilized."

Doc. 29 at 7.  First, defendant used the same procedure for all employees it

interviewed, making it difficult for plaintiff to claim the process discriminated

specifically against him.  *See, e.g., Gary v. Hale*, 212 Fed. Appx. 952, 959 (11th

Cir. 2007) (per curiam) (court upheld promotion protocol, in part, because the

defendant "presented evidence that the promotion protocol was the same for all

candidates, and provided the measurable factors by which all candidates were

scored.").  Furthermore, that plaintiff thinks that defendant should have utilized a

different selection process is irrelevant to this court's analysis:  "[f]ederal courts

do not sit as a super-personnel department that reexamines an entity's business

decisions.  No matter how medieval a firm's practices, no matter how high-handed

its decisional process, no matter how mistaken the firm's managers, the [law] does

not interfere.  Rather our inquiry is limited to whether the employer gave an honest

explanation of its behavior."  *Chapman v. AI Trans.*, 229 F.3d 1012, 1030 (11th

Cir. 2000) (quoting *Elrod*, 939 F.3d at 1470).

Therefore, to prevail, plaintiff must do more than just contend that

defendant uses subjective scoring or that defendant purportedly asked non-

pertinent questions.  For example, if he is contending that defendant's "subjective"

selection process has a disparate impact on African-Americans, at a minimum,

plaintiff should have presented evidence of the pass/fail rates of African-

Americans compared to non-African-Americans and made the requisite showing

of an adverse impact.  *See*, *e.g.*, Uniform Guidelines on Employee Selection

Procedures, 41 C.F.R. § 60-3.3 ("The use of any selection procedure which has an

adverse impact on the hiring, promotion . . . of members of any race, sex, or ethnic

group will be considered to be discriminatory . . . unless the procedure has been validated . . . .").

Second, the law does not prohibit employers from utilizing subjective criteria for employment decisions:

> It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation. To phrase it differently, subjective reasons are not the red-headed step-children of proffered nondiscriminatory explanations for employment decisions. Subjective reasons can be just as valid as objective reasons.

*Chapman*, 229 F.3d at 1034 (citations omitted). Therefore, plaintiff misses the mark when he claims that defendant's selection procedures are discriminatory because they utilize "subjective scoring."

Finally, the court notes that defendant has actually attempted to make its selection process more objective by using a structured interview process. "Structured interviews are where each candidate is asked the same questions, with limited follow up questions. They are designed to promote a non-discriminatory search by providing each candidate an equal opportunity to show how his or her skills fit the requirements for the vacant position." *Drakeford v. Ala. Co-op. Extension Sys.*, 416 F. Supp. 2d 1286, 1294-95 n.6 (M.D. Ala. 2006); *see also Arroyo-Audifred v. Verizon Wireless, Inc.*, 527 F.3d 215, 218 (1st Cir. 2008) ("The

interview process consisted of . . . a 'structured interview,' wherein all candidates would be asked the same questions by interviewers. The process is designed to be *objective*, as there are specific subjects to be covered and responses deemed acceptable." (emphasis added)). As part of its process, defendant asked each applicant, including plaintiff, the same questions in the exact order and scored each based on how their answers mirrored the predetermined responses. Doc. 25-4 at ¶5. That the process involves a human component, *i.e.*, the scoring, does not make it automatically discriminatory. *See, e.g.*, *Gary*, 212 Fed. Appx. at 959 (upholding a promotion decision in which "[t]he criteria by which the candidates were assessed were innocuous, and, despite some subjective components (a supervisor's evaluation, the *Committee interview*), they were generally quantifiable." (emphasis added)). In short, plaintiff has failed to establish that defendant's structured interview process and its scoring methodology are pretext for unlawful discrimination.

> 3. *An interview process is not biased or unfair simply because the interviewers are of a different race than the plaintiff.*

Next, plaintiff contends that defendant's selection process is discriminatory because defendant only used white interviewers for the six interview panels. This contention also falls short of establishing pretext. Courts have held consistently that the decision-maker's race alone does not establish pretext. *See Vessels v.*

*Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 772 (11th Cir. 2005) (plaintiff's "focus on the [interview] panelists' overall racial composition fails" to establish pretext); *Lane v. Broward County, Fla.*, 2009 WL 4893183, at *10 (S.D. Fla. Dec. 17, 2009) ("the fact that plaintiff believe[d] she was 'blown off' by the interviewers" because they were of a different race did not establish pretext); *Chriss v. Royal & Sonalliance Ins. Agency, Inc.*, 2006 WL 1097605 at *9 (N.D. Ga. Apr. 21, 2006) ("no reasonable jury could conclude that a decisionmaker's proffered legitimate reasons" were pretextual "simply on the basis of his race."). Significantly, plaintiff admitted that the interviewers treated him fairly (except for failing to give weight to his college degree), and that none made any racially motivated comments. Doc. 25-1 at 47 (Dep. pp. 183-84). Therefore, plaintiff's efforts to establish pretext based on his interviewers' race fall short.

> 4. *Plaintiff cannot establish pretext based on his alleged lack of additional training.*

Plaintiff alleges that defendant never informed him that it preferred additional training for the positions in question, and that defendant failed to offer him training it provided to his co-workers. Doc. 29 at 8. However, this contention is belied by plaintiff's own testimony. Specifically, plaintiff testified that he learned in January 2007, when he interviewed the first time for the Principal Engineering Inspector position, that defendant preferred someone with Waste

Water Grade C1 certification for that position. Doc. 25-1 at 45-46 (Dep. pp. 175-178).  Yet, he did nothing to obtain that training prior to interviewing for that position again in January 2008.  *Id.* at 46 (Dep. p. 177).  Rather than increasing his chances by obtaining the certification, plaintiff chose not to do so, incredibly, because he believed the lack of certification did not "disqualify" him from doing that job, "didn't think it was necessary," and that it "doesn't take a whole lot to get that certification." *Id.*  Plaintiff also testified that he never asked for the Grade C1 training and that "nobody offered the training."  *Id.* at 178.  In other words, the record does not support plaintiff's contention that defendant failed to inform him he needed additional training to be more competitive for some of the positions in question.

As for plaintiff's contention that defendant failed to offer him training it provided to his co-workers, plaintiff offers no evidence to support this assertion. Moreover, like his contention that defendant failed to tell him he needed additional training, his own testimony undermines his claim.  Plaintiff testified that he received additional training in other fields when defendant temporarily assigned him to "fill-in" in the Plans Review department.  *Id.* at 12 (Dep. pp. 41-44).  In the final analysis, plaintiff cannot establish a discrimination claim based upon bald allegations that have no basis in fact or are refuted by the objective

evidence.  *See Wilson*, 376 F.3d at 1089; *see also Thomas*, 302 F. Supp. 2d at

1308-09 (conclusory allegations are insufficient to defeat summary judgment).

> 5. *Plaintiff cannot establish pretext based on his "eviction" from his "office," or the fact that he did not have a personal computer, telephone, and camera.*

Finally, plaintiff seeks to establish pretext by contending that he "was

denied necessary benefits needed to perform his duties and gain the experience

needed to effectively compete with the selectees such as the personal use of a

phone, computer, and camera," and that defendant removed him from his office

"in spite of his seniority."  Doc. 29 at 7-8.  Given that plaintiff testified that he

spends six or seven hours of his workday at job sites, (doc. 25-1 at 14 (Dep. pp.

51-52)), the court questions whether a desk-top computer or office telephone

would have served any use out in the field or would have improved his

performance in the structured interviews.   In any event, plaintiff cannot contend

that defendant treated him differently because of his race since he testified that

only one of the four other inspectors in his classification had his own computer.

*Id*. (Dep. p. 50).  Plaintiff does not discuss whether his co-workers had telephones,

so there is no basis to support his claim that defendant treated him differently.

Plaintiff also failed to address defendant's contention that the telephone he claims

defendant denied him was for the empty office he claimed on his own, rather than

his assigned cubicle, and that at the time in question, defendant told him it lacked the funding to install a telephone in that office.  Doc. 25-1 at 25 (Dep. pp. 95-96). In other words, plaintiff failed to present evidence that defendant denied him a telephone based on his race.

As for the camera, unlike his fellow inspectors who each had their own cameras, it took a year for defendant to assign plaintiff a camera.  *Id.* at 18 (Dep. p. 67).  In the interim, on the three occasions when plaintiff needed a camera, he borrowed one from another supervisor; interestingly, the loaner was nicer than the cameras his co-workers had.  *Id.* at 19 (Dep. pp. 69-70).  Significantly, now that plaintiff has his own camera, he does not need it "very often."  *Id.* at 18 (Dep. p. 67).  Given that plaintiff always had access to a loaner when he needed a camera and now has one assigned to him, that he did not initially have one does not establish that defendant denied him a promotion because of his race.

Moreover, plaintiff's alleged equipment "denials" fall short of rising to actionable claims.[4]  *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238-39 (11th Cir. 2001) (noting that "not all conduct by an employer negatively affecting an employee constitutes adverse employment action" and that Title VII is not a

---

[4] Plaintiff is not raising these incidents as separate claims of discrimination.  His amended complaint only challenges defendant's failure to promote him.  Doc. 3 at 2-4.

"general civility code nor a statute making actionable the ordinary tribulations of the workplace.") (internal citations and quotation marks omitted); *see also Amos v. Tyson Foods Inc.*, 153 Fed. Appx. 637, 645 (11th Cir. 2005) (per curiam) ("Although it might be possible for some level of discrimination regarding working conditions to rise to an actionable level" under Title VII, plugged drains and slow filling of requests for new rain suits for sanitation employees in a chicken processing plant "fall short of an adverse employment action."). Therefore, these allegations, even if true, fail to establish that defendant's articulated reasons for the six promotion decisions are pretext for discrimination.

Finally, the court notes that plaintiff was not "removed" from his office. Rather, plaintiff found an unused room and "organized it and . . . made it [his] office." Doc. 25-1 at 22 (Dep. p. 83). Prior to that, like the other employees in his classification, plaintiff had his own cubicle. *Id.* at 24 (Dep. p. 89). Defendant "evicted" him from "his" office when it assigned a higher level employee in a different classification to that office. *Id.* at 24 (Dep. pp. 90-91). Defendant gave plaintiff two to three weeks to vacate and to return to his original cubicle. *Id.* (Dep. p. 91). Given that defendant treats plaintiff no differently than others in his classification, *i.e.*, it assigned him a cubicle like everyone else, plaintiff's

contention that defendant's reasons are pretextual since they allegedly removed him from his office fails.

## V. CONCLUSION

The court has no doubt that plaintiff is highly educated – he has a bachelor's degree and, despite his full-time work schedule, is pursuing a master's degree, probably to increase his chances of advancement.  Needless to say, he is justifiably frustrated over defendant's decision not to select him for any of the six positions.  Unfortunately for plaintiff, the law is clear that this court is not a super-personnel board that imposes its views as to whom an employer should have selected.  *See Elrod*, 939 F.2d at 1470.  Rather, the court's inquiry is limited to ascertaining whether the employer's proffered reasons are reasons that, in fact, "might motivate a reasonable employer."  *Combs*, 106 F.3d at 1543.  Moreover, courts "do not ask whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive."  *Denney v. City of Albany*, 247 F. 3d 1172, 1188 (11th Cir. 2001) (citation omitted).  Here, defendant has presented evidence that it utilizes a structured interview – a system that it is more objective and, thus, preferable over fully subjective selection systems – and that it promotes the highest-scoring individual.  Defendant has also presented evidence that the six individuals selected, one of whom is African-

American, scored higher than plaintiff in various categories.  Based on the record

before this court, the court cannot find that defendant discriminated against

plaintiff.  Accordingly, this court grants defendant's motion for summary

judgment and dismisses plaintiff's claims with prejudice.

Done this 28th day of May, 2010.


_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE